UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Terrence Moore, John Coffey, Michael Salgo, Michael Anderson, Kevin
O'Brien, and John Clausman as Trustees of the Metal Lathers Local 46
Pension Fund, Metal Lathers Local 46 Trust Fund, Metal Lathers Local 46
Annuity Fund, Metal Lathers Local 46 Apprenticeship Fund, and Metal
Lathers Local 46 Scholarship Fund,

and

Angelo Angelone, Kieran O'Sullivan, John Peters, Michael Salgo, Kevin
O'Brien, and Eric Lee as Trustees of the Cement & Concrete Workers
Pension Trust Fund, Cement & Concrete Workers Welfare Trust Fund,
Cement & Concrete Workers Annuity Trust Fund, Cement & Concrete
Workers Scholarship Trust Fund, and the Cement & Concrete Workers
Training and Education Trust Fund,

**Case No._____**

and

Gino Castignoli, Michael Rendina, Robert Bertuzzi, Eddie Barbaria, Frank
Martorano Jr., Joseph Mitrione, Michael Salgo, and Kevin O'Brien as
Trustees of the Cement Masons' Local 780 Pension Fund,  Northeast District
Council of the Operative Plasterers' & Cement Masons' International
Association Annuity Fund, Northeast District Council of the Operative
Plasterers' & Cement Masons' International Association Welfare Fund, and
Northeast District Council of the Operative Plasterers' & Cement Masons'
International Association Apprenticeship Fund,

**COMPLAINT**

Plaintiffs,

**-against-**

New York Concrete Corporation, John Russo, and New Leaf Development
LLC, Defendants.

Plaintiffs Terrence Moore, John Coffey, Michael Salgo, Michael Anderson, Kevin

O'Brien, and John Clausman as Trustees of the Metal Lathers Local 46 Pension Fund, Metal

Lathers Local 46 Trust Fund, Metal Lathers Local 46 Annuity Fund, Metal Lathers Local 46

Apprenticeship Fund, and Metal Lathers Local 46 Scholarship Fund; Angelo Angelone, Kieran

O'Sullivan, John Peters, Eric Lee, Kevin O'Brien and Michael Salgo as Trustees of the Cement

1

& Concrete Workers Pension Trust Fund, Cement & Concrete Workers Welfare Trust Fund,

Cement & Concrete Workers Annuity Trust Fund, Cement & Concrete Workers Scholarship

Trust Fund, and Cement & Concrete Workers Training and Education Trust Fund; and Gino

Castignoli, Michael Rendina, Robert Bertuzzi, Eddie Barbaria, Frank Martorano, Jr., Joseph

Mitrione, Michael Salgo, and Kevin O'Brien as Trustees of the Cement Masons' Local 780

Pension Fund,  Northeast District Council of the Operative Plasterers' & Cement Masons'

International Association Annuity Fund, Northeast District Council of the Operative Plasterers'

& Cement Masons' International Association Welfare Fund, and Northeast District Council of

the Operative Plasterers' & Cement Masons' International Association Apprenticeship Fund

(collectively, "Plaintiff Benefit Funds"), complain of Defendants New York Concrete

Corporation, John Russo and New Leaf Development LLC as follows:

## INTRODUCTION

1.   This is an action alleging several causes of action by the Plaintiff Benefit Funds

against New York Concrete Corporation ("New York Concrete"), John Russo, and New Leaf

Development LLC ("New Leaf"), under the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, and under Section 301 of the Labor Management

Relations Act ("LMRA"), 29 U.S.C. § 185, to recover benefit fund contributions owed to them

pursuant to various collective bargaining agreements ("CBAs") and trust fund documents from

an employer and its alter ego entity, as well as its principal officer, who fraudulently schemed to

avoid those contributions by utilizing New Leaf as an alter ego entity to perform work plainly

covered by the CBAs between New York Concrete and Local 46 Metallic Lathers and

Reinforcing Ironworkers Union ("Local 46"), the Cement and Concrete Workers District

Council, LIUNA ("Cement and Concrete Workers") and Cement Masons Local 780 ("Local

2

780").

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 29

U.S.C. §§ 1132(a)(3), 1132(e)(1), and 1132(f).

3.      This Court also has jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185,

in that certain of Defendants' actions violated collective bargaining agreements between an

employer and labor organizations.

4.      Venue lies in this district under 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 185(a), as

a substantial number of the violations of ERISA and of the CBAs occurred in this district.

## THE PARTIES

5.      Metal Lathers Local 46 Pension Fund, Metal Lathers Local 46 Trust Fund, Metal

Lathers Local 46 Annuity Fund, Metal Lathers Local 46 Apprenticeship Fund, and Metal Lathers

Local 46 Scholarship (collectively, "Local 46 Funds"), are "employee benefit plans" and

"multiemployer plans" within the meaning of 29 U.S.C. § 1002(3) and (37), with their principal

place of business at 61-02 32nd Avenue, Woodside, New York 11377.  The Local 46 Funds are

jointly administered by a Board of Trustees, comprised of an equal number of labor and

management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. §

186(c)(5).  The Trustees of the Local 46 Funds include Terrence Moore, John Coffey, Michael

Salgo, Michael Anderson, Kevin O'Brien, and John Clausman.

6.      The Cement and Concrete Workers Pension Trust Fund, Cement and Concrete

Workers Welfare Trust Fund, Cement and Concrete Workers Annuity Trust Fund, Cement and

Concrete Workers Scholarship Trust Fund, and the Cement and Concrete Workers Training and

Education Trust Fund (collectively, "Cement and Concrete Workers Funds"), are "employee

benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. § 1002(3) and (37), with their principal place of business at 35-30 Francis Lewis Boulevard, 2nd Floor, Flushing, New York 11358.  The Cement and Concrete Workers Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Trustees of the Cement and Concrete Workers Funds include Angelo Angelone, Kieran O'Sullivan, John Peters, Eric Lee, Kevin O'Brien and Michael Salgo.

7.     The Cement Masons' Local 780 Pension Fund,  Northeast District Council of the Operative Plasterers' & Cement Masons' International Association Annuity Fund, Northeast District Council of the Operative Plasterers' & Cement Masons' International Association Welfare Fund, and Northeast District Council of the Operative Plasterers' & Cement Masons' International Association Apprenticeship Fund  (collectively, "Local 780 Funds") are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. § 1002(3) and (37), with their principal place of business at 100 Merrick Road, Suite 500, West Rockville Centre, New York 11570).  The Local 780 Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).  The Trustees of the Local 780 Funds are Gino Castignoli, Michael Rendina, Robert Bertuzzi, Eddie Barbaria, Frank Martorano, Jr., Joseph Mitrione, Michael Salgo, and Kevin O'Brien.

8.     New York Concrete is a New York Corporation which identifies Donna Marie Russo as the owner and President but is in fact owned and controlled by her husband, John Russo.  New York Concrete is located at 20 Brick Court, Staten Island, New York.  Another address for this same building is 708 Sharrotts Road, Staten Island, New York.

4

9.      New Leaf is a New York limited liability company that allegedly has offices at 461 20th Street, Brooklyn, New York but is, in fact, headquartered at 20 Brick Court, Staten Island, New York. New Leaf identifies its principal as Eleonora Hroncich ("Hroncich") but it is, in fact, owned and controlled by John Russo.

10.     Although not a party to this action, The Related Company ("Related") has worked closely with John Russo and New York Concrete to establish New Leaf as an alter ego entity to perform concrete construction work for Related.  Related is a privately-owned real estate firm that is headquartered in New York at 60 Columbus Circle, New York, New York 10023 and is engaged in the development, acquisition, management, finance, marketing, and sales of real estate throughout the United States.  Related is the general contractor or construction manager of Hudson Yards, a large-scale real estate development on the west side of Manhattan.

## STATEMENT OF RELEVANT FACTS

### A.    THE RELEVANT CONTRACTS

11.     New York Concrete is a member of the Cement League, a multiemployer bargaining unit that has been party to successive CBAs with Local 46, the Cement and Concrete Workers, and the Cement Masons (collectively, "the Cement League Contracts").  New York Concrete, as a member of the Cement League, is bound to the Cement League Contracts.

**The Local 46 Contract**

12.     On July 1, 2016, Local 46 and the Cement League entered into a Memorandum of Understanding which extended the terms, with various modifications, of an expiring collective bargaining agreement between Local 46 and the Cement League through June 30, 2020 (the MOU and CBA together, the "Local 46 Contract").  The Local 46 Contract is attached as Exhibit A.

5

13. Article III of the Local 46 Contract, entitled "Work Covered," defines lather work and states that "[t]he Employer further agrees that the work described in all the paragraphs of this Article III shall be contracted for the Employer and shall be assigned to and performed by Journeyperson Lathers represented by the Union."

14. Article XII of the Local 46 Contract imposes the obligation to contribute to the Local 46 Funds for every hour of work by New York Concrete or its alter egos performing covered work under the Local 46 Contract.

15. Article XII(9) of the Local 46 Contract provides that if an employer becomes delinquent on its fund contribution obligation, the "Employer agrees that its corporate officers, partners or principals in its business will be personally responsible for such contributions and they will become Fiduciaries to the extent of such personal responsibility . . . ."

16. Article XX of the Local 46 Contract, entitled "Coverage of Lathing Work," provides that:

> It is agreed that if any Employer contracts for or performs lathing work falling within the jurisdiction of the Union, as such jurisdiction is set forth in the Union's Collective Bargaining Agreement with the Employing Metallic Furring and Lathing Contractors Association of New York, the Employer agrees that it will assign such work to Employees represented by the Union and further, the Employer agrees that all the terms of this Collective Bargaining Agreement shall be applicable to the performance of such work. The Employer must not subcontract bargaining unit work, unless the subcontractor receiving the subcontract, is bound and obligated under this Agreement.

**The Cement and Concrete Workers Contract**

17. On March 3, 2016, the Cement and Concrete Workers and the Cement League entered into an Amendment and Modification to the Collective Bargaining Agreement then in effect which extended the terms, with various modifications, of the existing collective bargaining

agreement between the Cement and Concrete Workers and the Cement League through June 30, 2020 (the Amendment and the CBA together, the "Cement and Concrete Workers Contract"). The Cement and Concrete Workers Contract is attached as <u>Exhibit B.</u>

18.     Article VI of the Cement and Concrete Workers Contract is entitled "Work Covered" and it defines the work covered by the Contract, which is summarized in Section 1 as follows: "handling and wheeling of unmixed or dry concrete material, the mixing, wheeling, spreading, leveling, placing, and ramming of concrete and cement mortar, the handling of all types and manner of form lumber or forms in connection with buildings and reinforcing steel; the hanging of all joists and the striking of centers and stripping of forms on the following work," which is described in Section 2.  The work covered also includes work as described in Sections 3 and 4.  Article VI provides that the "Employees in the bargaining unit shall perform all of the work" listed in Article VI.

19.     The Cement and Concrete Workers Contract imposes the obligation to contribute to the Cement and Concrete Workers Funds for every hour of work by New York Concrete or its alter egos performing covered work under the Cement and Concrete Workers Contract.

20.     Article X, Section 12 provides for personal liability of officers and owners of employers for contributions owed to the Cement and Concrete Workers Funds, as follows:

> The President, Vice President, Secretary-Treasurer, any other officer, three largest stockholders, partners, proprietor and executive manager of a corporation, partnership, company, joint venture or proprietorship or other entity, as such terms apply to the Employer acknowledges that he or she is personally benefited by this Agreement and that this Agreement is as well entered into on such individual's behalf and he or she is vested with the authority and control over the submission of reports and/or payment of contributions to C&CWDC Fringe Benefit Funds and acknowledges that he or she shall be personally and individually obligated to submit the required reports and pay the required

contributions to C&CWDC Fringe Benefit Funds for all work
performed by Employees.

21.    Article XIX, Section 2 of the Cement and Concrete Workers Contract provides as

follows:

> If an Employer covered by this Agreement or any such owner or
> principal forms or acquires by purchase, merger or otherwise, an
> interest, whether by ownership, stock, equitable or managerial, in
> another company, corporation, partnership or joint venture,
> performing bargaining unit work within this jurisdiction, this
> Agreement shall cover such other operation and such other
> bargaining unit Employees shall be considered an accretion to
> bargaining unit.

**The Cement Masons Local 780 Contract**

22.    The Cement Masons Local 780 and the Cement League are parties to a collective

bargaining agreement effective July 1, 2016 through June 30, 2019 (the "Cement Masons Local

780 Contract").  The CBA is attached hereto as <u>Exhibit C</u>.

23.    Article IV of the Cement Masons Local 780 Contract entitled "Work Covered"

defines the work covered by the Contract.  Article IV also provides that all such work shall be

"assigned to and performed by Cement Masons...."

24.    Article VI of the Cement Masons Local 780 Contract imposes the obligation to

contribute to the Local 780 Funds for every hour of work by New York Concrete or its alter egos

performing covered work under the Cement Masons Local 780 Contract.

25.    Article X, Section 12 provides for personal liability of officers and owners of

employers for contributions owed to the Local 780 Funds, as follows:

> The President, Vice President, Secretary-Treasurer, individual
> partner, employee of the partnership, officer, stockholder,
> proprietor or employee of the corporation, company, joint venture
> or proprietorship acknowledges that he or she is vested with the
> authority and control over the submission of reports and/or
> payment of contributions to the Funds and Entities and

8

acknowledges that he or she shall be personally and individually obligated to submit the required remittance reports and/or pay the required contributions and dues to the Funds and Entities for all work performed by employees and the individual signing this Agreement has the authority so to bind them and they are so bound pursuant to 29 U.S.C. § 1002(5) and § 1145.

26.     Article XV of the Cement Masons Local 780 Contract provides as follows:

If an Employer covered by this Agreement or any such owner or principal forms or acquires by purchase, merger or otherwise, an interest, whether by ownership, stock, equitable or managerial, in another company, corporation, partnership or joint venture, performing bargaining unit work within this jurisdiction, this Agreement shall cover such other operation and such other bargaining unit Employees shall be considered an accretion to the bargaining unit.

## B.     THE ALTER EGO ALLEGATIONS

27.     New York Concrete is a construction firm specializing in excavation, concrete foundation, and concrete superstructure work in the New York City area.

28.     Hudson Yards is the largest private real estate development in the history of the United States and the largest development in New York City since Rockefeller Center.  Hudson Yards will include more than 18 million square feet of commercial and residential space and more than a million hours of work on the project would be covered by the Contracts between New York Concrete and the Unions.  While there is a Project Labor Agreement ("PLA") in place between Related and the New York City Building Construction Trades Council covering much of the work on the Hudson Yards project, certain buildings are not covered by the PLA.

29.     50 Hudson Yards is a construction project at the Hudson Yards that is not covered by the PLA.  On May 4, 2017, the Metropolitan Transportation Authority Capital Construction office approved Related's construction plans for the foundation at 50 Hudson Yards.  Related functions as its own general contractor or construction manager in the construction of the

Hudson Yards buildings.  Related has entered into contracts with concrete companies to perform

excavation, foundation and superstructure work for several of the Hudson Yards projects,

including 50 Hudson Yards.  All of the prior concrete construction projects at Hudson Yards

have been awarded by Related to union concrete companies such as New York Concrete.

30.     Related desired to obtain (i) the concrete construction knowledge, (ii) the concrete

construction experience, (iii) the ability to obtain bonding and (iv) the ability to obtain liability

insurance of a union contracting firm for the Related project at 50 Hudson Yards while at the

same time paying reduced wage rates and benefits to the workers actually doing the concrete

construction work.

31.     Upon information and belief, New York Concrete has performed millions of

dollars in concrete construction work for Related from 2015 to the present.  From June, 2015 to

the present, New York Concrete performed support of excavation, caissons, piles excavation, and

foundation work for Related at 264 West Street/70 Vestry Street, New York, New York.  From

May, 2015, New York Concrete performed support of excavation, excavation, and foundation

work for Related at 15 Hudson Yards, Tower D, New York, New York.  From March, 2015

through May, 2015, New York Concrete performed support of excavation, caissons, excavation,

and foundation work at 55 Hudson Yards, New York, New York.  John Russo was the principal

representative of New York Concrete on each of these jobs.  The concrete construction work

New York Concrete performed for Related from 2015 to the present is valued in excess of $60

million.

32.     In each of those construction projects done by New York Concrete for Related

from 2015 through the present, members of Local 46, the Cement and Concrete Workers, and

Local 780 have performed the tasks traditionally performed within their historical work

10

jurisdictions.

33.     From 2016 through the present, Related has demanded that Local 46, the Cement

and Concrete Workers and other unions agree to substantial reductions in the wages and benefits

due to them under their Cement League Contracts.  Local 46, the Cement and Concrete Workers

and other unions made substantial concessions in their Contracts that were reached in 2016 with

the Cement League but did not thereafter agree to make additional concessions demanded by

Related that would be applicable to the Hudson Yards concrete construction work.

34.     John Russo and Related have worked together to demand reduced labor costs

from Local 46, the Cement and Concrete Workers, and Local 780.  In 2015, John Russo brought

Related to a meeting held at the offices of Local 46 between representatives of the Cement

League and representatives of Local 46, the Cement and Concrete Workers and other unions for

the purpose of allowing Related to demand labor cost concessions from those unions.

35.     Related has utilized John Russo and New York Concrete as a vehicle to pressure

Local 46, the Cement and Concrete Workers, and Local 780 to reduce their labor costs at other

times as well.  In and around July, 2016, Related was constructing a building at 500 West 30th

Street, New York, New York ("500 West 30th Street Project").  New York Concrete was the

concrete contractor for both the foundation and the upper floors of this 28 story project.  The

Cement League and Local 46, the Cement and Concrete Workers, and Local 780 were in the

midst of negotiating successor Contracts to those that expired on June 30, 2016.  Related caused

the Local 46 signatory contractor to be removed from this job and brought in non-union workers

to perform the metal lathing (rebar) work, that is traditionally within the jurisdiction of Local 46,

for a period of more than one week to pressure Local 46 to reduce its labor costs.  New York

Concrete was obligated by the Local 46 Contract to utilize Local 46 represented employees to

11

perform this metal lathing work and violated the Local 46 Contract by utilizing non-union individuals directly, or indirectly through Related, to perform this work.  New York Concrete failed to make contributions to the Local 46 Funds for the hours worked by these non-union personnel doing metal lathing work on the 500 West 30th Street Project for this period in 2016 and is obligated to pay those delinquent contributions to the Local 46 plus interest, liquidated damages, attorneys' fees and costs.  There was no legitimate business justification to remove the Local 46 signatory rebar contractor from this job in 2016 and then to rehire it a week later, other than to pressure Local 46 to reduce its labor costs.

36.    As recently as February 7, 2018, Related met with representatives of Local 46, the Cement and Concrete Workers, Local 780 and other unions to demand labor cost concessions to enable the members of those unions to perform work on the Hudson Yards Project and nearby Projects such as 50 Hudson Yards.

37.    Upon information and belief, to obtain the labor concessions that it had unsuccessfully sought from the Unions, Related induced John Russo, the actual owner and controller of New York Concrete, to form or utilize an existing corporation as an alter ego entity through which he and New York Concrete could perform the concrete construction work now being done by members of the Unions without having to abide by the terms of the labor contracts applicable to New York Concrete.  Upon information and belief, Related advised John Russo that if he agreed to create an alter ego entity that would not be bound to those Contracts, John Russo would get all or most of the concrete construction work to be done as part of Hudson Yards.

38.    The offer by Related was enough to convince John Russo to violate the Contract with the Unions since Hudson Yards will result in millions of dollars in concrete construction

work for him to perform.

39.     John Russo decided to use a limited liability corporation known as New Leaf as an alter ego of New York Concrete to perform the concrete construction work at Hudson Yards. The building known as 50 Hudson Yards is the first Hudson Yards project to be built by New York Concrete through its alter ego New Leaf in violation of the Cement League Contracts.

40.     The 50 Hudson Yards building spans an entire city block and will be New York City's fourth largest commercial office tower when completed in 2022.  A project of this size and complexity requires a concrete construction company with experienced management, supervisors, and craftsmen, and sufficient financial strength and the track record to obtain insurance and bonding appropriate for a project worth tens of millions of dollars.  A firm's track record of success in building similar projects is a key criterion for the selection of concrete construction firms.

### C.   NEW LEAF IS A SHAM ORGANIZATION THAT COULD NOT OBTAIN A MAJOR CONCRETE CONSTRUCTION PROJECT ON ITS OWN

41.     New Leaf was formed in 2011. Its only reported business activity prior to 2017 is the (i) development of an eight (8) story residential building in the Clinton Hill neighborhood at 82 Irving Place in Brooklyn, New York ("the 82 Irving Place Project") and (ii) serving as General Contractor for a condo conversion project at 414 Washington Street, New York, New York ("414 Washington Street Project") and (iii) 23 Bleecker Street, Brooklyn New York ("23 Bleecker Street Project").  New York Concrete actually performed the concrete construction work for the 82 Irving Place Project, the 414 Washington Street Project and the 23 Bleecker Street Project.

42.     New York Concrete, Uncle Steve's Italian Specialties (see paragraph 44 below), and Brick Court Studios are all located at 20 Brick Court, Staten Island, New York.  New Leaf is

also located at 20 Brick Court, Staten Island, New York, where it shares space with New York

Concrete and has substantially identical operations with New York Concrete.

43.     New Leaf and New York Concrete worked together on a project at 23 Bleecker

Street, Brooklyn, New York.  Between November, 2013 and July, 2014, New Leaf was cited five

times by the New York City Department of Transportation for failure to comply with the terms

and conditions of Department of Transportation permits at the 23 Bleecker Street Project.  New

Leaf was also cited one additional time by the NYPD Transport Intelligence Division for storage

of construction materials without a permit.  The address maintained by the New York City Office

of Administrative Trials and Hearings ("OATH") for New Leaf for each of these citations is 20

Brick Court, Staten Island, New York.

44.     The publicly-identified owner and President of New Leaf is Hroncich, who has a

marketing degree from St. Peter's College and has been employed as a consumer brand

marketing specialist since graduation from college for the Limited, Tommy Hilfiger, and Coca

Cola Apparel.  She is currently a principal of Uncle Steve's Italian Specialties, which sells Italian

food specialties, and Brick Court Studios, which rents studios for film or stage productions.  Her

LinkedIn page identifies her professional activities as real estate and film production.

(https://www.linkedin.com/in/eleonora-lee-hroncich-32013110/, last visited on March 15, 2018).

She has no experience in the area of concrete construction, and it is preposterous to believe that

Related would enter into a multimillion dollar concrete construction contract with a company led

by an individual of her background and lack of experience in concrete construction.

45.     Other New Leaf executives are also inexperienced in concrete construction.

Joseph Scarpinito is listed in New York City Department of Building ("DOB") records as an

executive at New Leaf.  Scarpinito was a principal of a developer of a condo conversion at 414

14

Washington Street, New York, New York, and he used the Washington Street address for New

Leaf on its DOB filing for the 82 Irving Place Project.  Scarpinito is also identified in DOB

records as an employee of Bleeker Street Gardens LLC, for which John Russo served as

President.

46.      Scarpinito has a history of business frauds.  In 1998, he was convicted in New

York State for felony bank fraud.  In 2014, Scarpinito was sued by the New York State Attorney

General's office for failing to disclose his fraud conviction in a condo offering plan and for

claiming in that plan that his 83-year-old mother was the sole person controlling the sponsor of

an entity developing a condo at 110th Street, New York, New York.  Scarpinito submitted at least

nine false filings to the DOB in which he hid his participation in the project by using his

mother's name.  On December 13, 2013, an order was entered by the New York State Supreme

Court barring him from securities or condominium-related work in New York State until that

litigation was completed.

47.      The alleged headquarters of New Leaf at 461 20th Street, Brooklyn, New York is

a small office building with no signage indicating that it is New Leaf's headquarters.  The only

signage at 461 20th Street concerning its tenants is for Uncle Steve's Italian Specialties, which is

named on a poster in the garage that is visible from the sidewalk of 20th Street.  Upon

information and belief, all or substantially all of the office functions, including office clerical,

estimation, billing and accounting, necessary to operate New Leaf are performed at 20 Brick

Court by the clerical employees of New York Concrete.

48.      The 461 20th Street location does not have a vehicle yard or a staging area for

equipment.  The New York Concrete facilities at 20 Brick Court do have a vehicle yard and a

staging area for equipment.  Trucks owned and operated by New York Concrete are being

utilized by New Leaf to transport materials and equipment to the 50 Hudson Yard site.

49.     John Russo uses 20 Brick Court as the address for another business he owns, as well.  Bleeker Street Gardens LLC is the owner of a project at 23 Bleecker Street, Brooklyn, New York.  John Russo is the President of Bleeker Street Gardens LLC and uses the email address jrusso@nyconcrete.com in connection with this business.

50.     New York Concrete and New Leaf also have a substantially identical business purpose.  The business purpose of New York Concrete is concrete construction in the New York City area.  New Leaf is also engaging in concrete construction in the New York City area, specifically at 50 Hudson Yards.

51.     New York Concrete and New Leaf also have substantially identical management and supervision.  New York Concrete advertises that it is a certified Woman-owned Business Enterprise company with New York State, New York City, the NYC School Construction Authority, the Port Authority of New York & New Jersey, and the Dormitory Authority of the State of New York.  Upon information and belief, the identification of Donna Marie Russo as the President of New York Concrete is a sham for the purposes of qualifying New York Concrete as a Woman-owned Business Enterprise.  In fact, John Russo is the Chief Executive Officer of New York Concrete.  Hroncich is allegedly the owner of New Leaf, and John Russo identifies himself as the 50 Hudson Yards Project Manager and Operations Manager for New Leaf.  However, John Russo is, in fact, the Chief Executive Officer of New Leaf.  Upon information and belief, John Russo negotiated the contract between Related and New Leaf for concrete construction services at 50 Hudson Yards without participation by Donna Marie Russo or Hroncich.

52.     Since July, 2017, other New York Concrete executives, managers and supervisors have also become executives, managers and supervisors of New Leaf assigned to 50 Hudson

Yards.  John Russo has operated an excavator machine at the 50 Hudson Yards Project.  Sal

Russo, the brother of John Russo, is a manager at New York Concrete and a manager for New

Leaf at the 50 Hudson Yards Project.  Lee Chapman was employed as a project manager for New

York Concrete and became a project manager for New Leaf on 50 Hudson Yards in 2017.  Al

Ferriera was a project manager for New York Concrete who became a project manager for New

Leaf on 50 Hudson Yards in August, 2017.  Joseph Lombardi worked as a supervisor for New

York Concrete and is now a Supervisor for New Leaf on the 50 Hudson Yards Project.  Joseph

Sullivan, a retired member of the Carpenters union, was a superintendent for New York Concrete

and is now a superintendent for New Leaf at its 55 Hudson Yards Project.  Sal Russo, Joe

Lombardi and Joe Sullivan were supervisors or managers for New York Concrete at its 28th and

10th Avenue Project, its 55 Hudson Tower Projects, Vestry Street Project and its 285 Jay Street

Project and now fill those same roles for New Leaf at its 55 Hudson Yards Project.

     53.    New York Concrete and New Leaf share substantially identical customers.  Both

New York Concrete and New Leaf performed work on the 82 Irving Place Project in Brooklyn in

2011.  New York Concrete did the concrete work on that project and New Leaf was a developer

for the project.  Related was the largest customer of New York Concrete in recent years and is

also the largest customer of New Leaf.

     54.    New Leaf has used property owned by New York Concrete at its 50 Hudson yards

Project, including expensive concrete forms that are necessary to pour concrete.  New Leaf has

taken construction machines that were owned by New Leaf to the 50 Hudson Yards Project and

painted them over to remove the markings from New York Concrete.

### AS FOR A FIRST CAUSE OF ACTION
### BY THE LOCAL 46 FUNDS AGAINST
### NEW YORK CONCRETE AND NEW LEAF FOR VIOLATION OF ERISA

55.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 to 54 as if fully set forth herein.

56.     Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement … [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

57.     Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter or the terms of the plan."

58.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that:

[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>> (i)  interest on the unpaid contributions, or
>> (ii) liquidated damages … in an amount not in excess of 20 percent … of the amount determined by the court under subparagraph (A),
> (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E)  such other legal or equitable relief as the court deems appropriate.

59.     Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant,

beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action ..."

60.     Upon information and belief, New York Concrete has underpaid the contributions that are due and owing the Local 46 Funds on a systematic and continuous basis since the start of the 50 Hudson Yards Project in 2017 and will continue to do so unless enjoined by this Court.

61.     New York Concrete's failure to remit contributions to the Local 46 Funds, for hours worked by individuals performing covered work pursuant to the Local 46 Contract constitutes a failure to make contributions in accordance with the terms of the applicable Contracts in violation of §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, giving rise to an action under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

62.     The Local 46 Funds have sustained or will sustain losses believed to be in excess of Five Million Dollars ($5,000,000.00) based on the failure or anticipated future failure of New York Concrete to make the required contributions on the work performed on the 50 Hudson Yards Project identified in this Complaint and other jobs currently unknown to Plaintiffs.

63.     New Leaf is an alter ego of New York Concrete and is therefore obligated, under the Local 46 Contract, to make contributions to the Local 46 Funds for work performed by New Leaf employees at the 50 Hudson Yards Project and elsewhere.

64.     Moreover, New York Concrete additionally failed to make contributions to the Local 46 Funds based on work covered by the Local 46 Contract that was performed in 2016 in connection with the 500 West 30th Street Project.

**AND AS FOR A SECOND CAUSE OF ACTION
BY THE CEMENT AND CONCRETE WORKERS FUNDS AGAINST
NEW YORK CONCRETE AND NEW LEAF FOR VIOLATION OF ERISA**

65.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 to 64 as if fully set

forth herein.

66.     Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement … [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

67.     Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter or the terms of the plan.

68.     Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that:

[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan

    (A)  the unpaid contributions,
    (B)  interest on the unpaid contributions,
    (C)  an amount equal to the greater of--
        (i)   interest on the unpaid contributions, or
        (ii)  liquidated damages … in an amount not in excess of 20 percent … of the amount determined by the court under subparagraph (A),
    (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E)  such other legal or equitable relief as the court deems appropriate.

69.     Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action …."

70.     Upon information and belief, New York Concrete has underpaid the contributions

20

that are due and owing the Cement and Concrete Worker Funds on a systematic and continuous

basis since the start of the 50 Hudson Yards Project in 2017 and will continue to do so unless

enjoined by this Court.

71.     New York Concrete's failure to remit contributions to the Cement and Concrete

Workers Funds, for hours worked by individuals performing covered work at the 50 Hudson

Yards Project pursuant to the  Cement and Concrete Workers Contract constitutes a failure to

make contributions in accordance with the terms of the applicable Contracts, in violation of §§

502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, giving rise to an action under § 502(a)(3)

of ERISA, 29 U.S.C. § 1132(a)(3).

72.     The Cement and Concrete Workers Funds have sustained or will sustain losses

believed to be in excess of Five Million Dollars ($5,000,000.00) based on the failure or

anticipated future failure of New York Concrete to make the required contributions for work

covered by the Cement and Concrete Workers Contract and performed on the 50 Hudson Yards

Project identified in this Complaint and other jobs currently unknown to Plaintiffs.

73.     New Leaf is an alter ego of New York Concrete and is therefore obligated, under

the Cement and Concrete Workers Contract, to make contributions to the Cement and Concrete

Workers Funds for work covered by the Cement and Concrete Workers Contract and performed

by New Leaf employees at the 50 Hudson Yards Project and elsewhere.

**AND AS FOR A THIRD CAUSE OF ACTION
BY THE LOCAL 780 FUNDS AGAINST
NEW YORK CONCRETE AND NEW LEAF FOR VIOLATION OF ERISA**

74.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 to 73 as if fully set

forth herein.

75.     Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is

obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement … [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

76.   Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter or the terms of the plan."

77.   Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that:

[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan

(A)  the unpaid contributions,
(B)  interest on the unpaid contributions,
(C)  an amount equal to the greater of--
    (i)   interest on the unpaid contributions, or
    (ii)  liquidated damages … in an amount not in excess of 20 percent … of the amount determined by the court under subparagraph (A),
(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)  such other legal or equitable relief as the court deems appropriate.

78.   Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action …"

79.   Upon information and belief, New York Concrete has underpaid the contributions that are due and owing the Plaintiff Local 780 Funds on a systematic and continuous basis since the start of the 50 Hudson Yards Project in 2017 and will continue to do so unless enjoined by this Court.

80.     New York Concrete's failure to remit contributions to the Local 780 Funds, for hours worked by individuals performing covered work pursuant to the Cement Masons Local 780 Contract constitutes a failure to make contributions in accordance with the terms of the applicable collective bargaining agreements, in violation of §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, giving rise to an action under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

81.     The Local 780 Funds have sustained or will sustain losses believed to be in excess of One Million Dollars ($1,000,000.00) based on the failure or anticipated future failure of New York Concrete to make the required contributions for work covered by the Local 780 Contract and performed on the 50 Hudson Yards Project identified in this Complaint and other jobs currently unknown to Plaintiffs.

82.     New Leaf is an alter ego of New York Concrete and is therefore obligated, under the Cement Masons Local 780 Contract, to make contributions to the Local 780 Funds for work covered by the Local 780 Contract and performed by New Leaf employees at the 50 Hudson Yards Project and elsewhere.

### AND AS FOR A FOURTH CAUSE OF ACTION AGAINST NEW YORK CONCRETE AND NEW LEAF FOR VIOLATION OF THE LMRA BY BREACHING THE LOCAL 46 CONTRACT

83.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 to 82 as if fully set forth herein.

84.     Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

85.     Section 301(b) of the LMRA, 29 U.S.C. § 185(b), provides that "[a]ny labor

organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents."

86.    The Local 46 Contract sets forth the work for which contributions should be made to the Local 46 Funds.

87.    Article XIX of the Local 46 Contract required New York Concrete to assign all lathing work to employees represented by Local 46, and to the extent New York Concrete subcontracts any work, it must be to an employer that is bound by all of the provisions of the Local 46 Contract.

88.    Since at least 2017, New York Concrete, through its alter ego New Leaf, has performed work covered by the Local 46 Contract without making contributions to the Local 46 Funds in connection with such work.

89.    New York Concrete and New Leaf failed to remit contribution payments to the Local 46 Funds for the hours worked by employees performing work covered by the Local 46 Contract at the jobs identified in this Complaint, and at other jobs now unknown to Plaintiffs.

90.    The Local 46 Funds, which are third party beneficiaries of the Local 46 Contract, have sustained losses of Five Million Dollars ($5,000,000.00) based on the failure of New York Concrete and New Leaf to perform their obligations under the Local 46 Contract.

**AND AS FOR A FIFTH CAUSE OF ACTION**
**AGAINST NEW YORK CONCRETE AND NEW LEAF FOR VIOLATION OF THE**
**LMRA BY BREACHING THE CEMENT AND CONCRETE WORKERS CONTRACT**

91.    Plaintiffs repeat and re-allege the allegations of paragraphs 1 to 90 as if fully set forth herein.

92.    Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that:

24

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

93.     Section 301(b) of the LMRA, 29 U.S.C. § 185(b), provides that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents."

94.     The Cement and Concrete Workers Contract sets forth the work for which contributions should be made to the Cement and Concrete Workers Funds.

95.     Article XIX of the Cement and Concrete Workers Contract provides that the obligations of the Contract are applicable not only to the signatory employer, New York Concrete, but to any other employer to which New York Concrete has formed or acquired.  In addition, to the extent New York Concrete subcontracts any work, it must be to an employer that is bound by all of the provisions of the Cement and Concrete Workers Contract.

96.     Since at least 2017, New York Concrete, through its alter ego New Leaf, has performed work covered under the Cement and Concrete Workers Contract without making contributions to the Cement and Concrete Workers Funds in connection with such work.

97.     New York Concrete and New Leaf failed to remit contribution payments to the Cement and Concrete Workers Funds for the hours worked by employees performing covered work at the jobs identified in this Complaint, and at other jobs now unknown to Plaintiffs.

98.     The Cement and Concrete Workers Funds, which are third party beneficiaries of the Cement and Concrete Workers Contract, have sustained losses of Five Million Dollars ($5,000,000.00) based on the failure of New York Concrete and New Leaf to perform their

25

obligations under the Cement and Concrete Workers Contract.

### AND AS FOR A SIXTH CAUSE OF ACTION
### AGAINST NEW YORK CONCRETE AND NEW LEAF FOR VIOLATION
### OF THE LMRA BY BREACHING THE CEMENT MASONS LOCAL 780 CONTRACT

99.     Plaintiffs repeat and re-allege the allegations of paragraphs 1 to 98 as if fully set forth herein.

100.    Section 301(a) of the LMRA, 29 U.S.C. § 185(a), provides that:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

101.    Section 301(b) of the LMRA, 29 U.S.C. § 185(b), provides that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents."

102.    The Cement Masons Local 780 Contract sets forth the work for which contributions should be made to the Local 780 Funds.

103.    Article XV of the Cement Masons Local 780 Contract provides that the obligations of the Contract are applicable not only to the signatory employer, New York Concrete, but to any other employer to which New York Concrete has formed or acquired.  In addition, to the extent New York Concrete subcontracts any work, it must be to an employer that is bound by all of the provisions of the Cement Masons Local 780 Contract.

104.    Since at least 2017, New York Concrete, through its alter ego New Leaf, has performed work covered under the Cement Masons Local 780 Contract without making contributions to the Local 780 Funds in connection with such work.

26

105.    New York Concrete and New Leaf failed to remit contribution payments to the Local 780 Funds for the hours worked by employees performing covered work at the jobs identified in this Complaint, and at other jobs now unknown to Plaintiffs.

106.    The Local 780 Funds, which are third party beneficiaries of the Local 780 Contract, have sustained losses of One Million Dollars ($1,000,000.00) based on the failure of New York Concrete and New Leaf to perform their obligations under the Cement Masons Local 780 Contract.

### AS AND FOR A SEVENTH CAUSE OF ACTION BY THE PLAINTIFF BENEFIT FUNDS AGAINST JOHN RUSSO AND NEW YORK CONCRETE FOR COMMON LAW FRAUD UNDER ERISA

107.    The Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 106 as if fully set forth herein.

108.    John Russo and New York Concrete were responsible for creating and submitting to the Plaintiff Benefit Funds the weekly payroll reports that purported to set forth the journeymen and apprentice hours spent performing covered work by employees of New York Concrete and its alter egos during each week.

109.    John Russo made false reports to the Plaintiff Benefit Funds intending that the Plaintiff Benefit Funds would rely upon these reports and fail to seek contributions from New York Concrete based upon the hours worked by New York Concrete's alter ego New Leaf.

110.    John Russo and New York Concrete knowingly committed fraud against the Plaintiff Benefit Funds by creating and orchestrating a scheme to omit hours worked in covered employment by New Leaf employees from the contribution reports sent by New York Concrete to the Plaintiff Benefit Funds.

111.    John Russo is the President of New York Concrete and a controlling corporate

27

official of New Leaf.  John Russo and New York Concrete made, or caused to be made, materially false representations and omissions of existing facts by filing false weekly contribution statements with the Plaintiff Benefit Funds that failed to disclose the hours being worked in covered employment through New Leaf, thereby underpaying the amounts of contributions they knew to be owed.

112.   John Russo and New York Concrete knew that New York Concrete was filing false reports and making substantial underpayments each week to the Plaintiff Benefit Funds.

113.   The Plaintiff Benefit Funds reasonably relied, to their detriment, on the material and false representations and omissions made by New York Concrete concerning the hours of covered work by New Leaf.

114.   Particular facts demonstrating the creation and the operation of New Leaf as an alter ego of New York Concrete are exclusively within the knowledge of Defendants.

115.   Defendants acted in an intentional and reckless manner, consciously disregarded the rights of the Plaintiff Benefit Funds, and showed wanton dishonesty and disregard of their civic obligations.  The fraudulent acts committed by Defendants exhibit a high level of moral culpability aimed at the public.

116.   Defendants John Russo and New Leaf are jointly and severally liable with New York Concrete for any contributions due and owing pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, based on their knowing participation in a scheme to underpay New York Concrete's contributions to the Plaintiff Benefit Funds in an amount to be proved at trial but believed, with interest, to be in excess of Eleven Million Dollars.

**WHEREFORE**, Plaintiffs respectfully demand judgment as follows:

28

1.      On the First Cause of Action pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), a judgment against New York Concrete in favor of the Local 46 Funds for unpaid contributions as determined to be due:

> A.      based upon New York Concrete's failure to make contributions to the Local 46 Funds based on work covered by the Local 46 Contract that was performed in 2016 by non-union workers in connection with the 500 West 30th Street Project, and
>
> B.      based upon New York Concrete's underreporting to the Local 46 Funds of covered work hours performed by New Leaf, as New York Concrete's alter ego entity.

The amounts owed and that will be owed by New York Concrete for the conduct described in paragraphs A and B above is believed to be approximately Five Million Dollars ($5,000,000.00), plus: (i) interest on the unpaid contributions, and (ii) an amount equal to the greater of (x) the interest on the unpaid contributions, or (y) liquidated damages in an amount of 20% of the unpaid contributions.

2.      On the Second Cause of Action pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), a judgment against New York Concrete, in favor of the Cement and Concrete Workers Funds for unpaid contributions as determined to be due based upon New York Concrete's underreporting to the Cement and Concrete Workers Funds of covered work hours performed by New York Concrete's alter ego entity, as identified in this litigation, which is believed to be approximately Five Million Dollars ($5,000,000.00), plus: (i) interest on the unpaid contributions, and (ii) an amount equal to the greater of (x) the interest on the unpaid contributions, or (y) liquidated damages in an amount of 20% of the unpaid contributions.

3.     On the Third Cause of Action pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), a judgment against New York Concrete, in favor of the Cement Mason Local 780 Funds for unpaid contributions as determined to be due based upon New York Concrete's underreporting to the Local 780 Funds of covered work hours performed by New York Concrete's alter ego entity, as identified in this litigation, which is believed to be approximately One Million Dollars ($1,000,000.00), plus: (i) interest on the unpaid contributions, and (ii) an amount equal to the greater of (x) the interest on the unpaid contributions, or (y) liquidated damages in an amount of 20% of the unpaid contributions.

4.     On the Fourth Cause of Action against pursuant to § 301 of the LMRA, 29 U.S.C. § 185, a judgment against New York Concrete and in favor of the Local 46 Funds for Five Million Dollars ($5,000,000.00) plus interest.

5.     On the Fifth Cause of Action against New York Concrete pursuant to § 301 of the LMRA, 29 U.S.C. § 185, a judgment against that entity in favor of the Cement and Concrete Workers Funds for Five Million Dollars ($5,000,000.00) plus interest.

6.     On the Sixth Cause of Action against New York Concrete pursuant to § 301 of the LMRA, 29 U.S.C. § 185, a judgment against that entity in favor of the Local 780 Funds for One Million Dollars ($1,000,000.00) plus interest.

7.     On the Seventh Cause of Action for intentional fraud pursuant to the federal common law under ERISA, against New York Concrete and John Russo, a judgment, jointly and severally, against each of said Defendants in favor of the Plaintiff Funds for Eleven Million Dollars plus interest.

8.     An award to Plaintiffs of their reasonable attorneys' fees and costs, pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and;

9.      Such other and further relief, including injunctive relief, as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a trial by jury of each of their claims in this action.

Dated: March 27, 2018
New York, New York

Cohen, Weiss and Simon LLP
Attorneys for Plaintiffs

By:    Thomas M. Kennedy
Susan M. Jennik
Evan R. Hudson-Plush
900 Third Avenue
New York, NY 10022
Tel. 212-563-4100
Fax. 212-563-6527
tkennedy@cwsny.com
sjennik@cwsny.com
ehudson-plush@cwsny.com