**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X

TERRENCE MOORE, ET AL.

                Plaintiffs,

          -against-

NEW YORK CONCRETE CORPORATION, ET AL.,

                Defendants.

-------------------------------------------------------------------- X

Case No.: 18-2791 (PAE)

Document Filed Electronically

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOHN RUSSO'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT'S SEVENTH CAUSE OF ACTION

---

**GENOVA BURNS LLC**
Patrick W. McGovern, Esq. (1246)
Attorneys for Defendants, New Leaf Development
LLC and John Russo
494 Broad Street
Newark, New Jersey 07102
Email: pmcgovern@genovaburns.com
Phone: 973-535-7129

*Of Counsel and On the Brief:*
Patrick W. McGovern, Esq.

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ............................................................................... 1

**STATEMENT OF FACTS** .................................................................................. 2

**ARGUMENT** ............................................................................................... 7

THE COURT SHOULD GRANT DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT'S SEVENTH CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM
FOR WHICH RELIEF CAN BE GRANTED ....................................................... 7

    A. Standard of Review ................................................................................ 7

    B. The Seventh Cause of Action Fails to Establish Any Cognizable Basis for a Claim of
       Personal Liability Against John Russo ........................................................ 8

    C. The Second Circuit Does Not Recognize a Cause of Action under ERISA for Common
       Law Fraud ........................................................................................ 16

    D. The Seventh Cause of Action Fails to Comply with Fed. R. Civ. P. 9(b) and Must be
       Dismissed In Its Entirety ....................................................................... 19

**CONCLUSION** ........................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Aztech Chas. P. Young Co.,*
  807 F. Supp. 1068 (S.D.N.Y. 1992) ............................................................ 16, 18

*Altieri v. Cigna Dental Health, Inc.,*
  753 F. Supp. 61 (D. Conn. 1990) ..................................................................... 17

*Ashcroft v. Iqbal,*
  556 U.S. 662, (2009)
  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007)) ....................................... 7

*Bourgal v. Cervoni,*
  508 U.S. 973 (1993) ..................................................................................... 11

*Brumfield et al. v. Merck & Co.,*
  18-CV-365(JFB)(GRB), 2018 WL2277835 *1, *4 (E.D.N.Y. May 18, 2018) ........... 21, 22

*Caputo v. Pfizer, Inc.,*
  267 F.3d 181 (2d Cir. 2001) (Under Rule 9(b) ...................................................... 20

*Carpenters Welfare Fund of Illinois v. Shadwick,*
  Docket No. 93 C 2362, 1994 WL 86015, at *4 (N.D. Ill. Mar. 14, 1994) ................... 18

*Cement and Concrete Workers District Council Welfare Fund League v. Lollo,*
  35 F.3d 29 (1994) ......................................................................................... 9

*Consumer Financial Protection Bureau v. RD Legal Funding, LLC,*
  17-CV-890(LAP), 2018 WL3094916 *1, *6 ........................................................ 15

*Contrera v. Langer,*
  2018 WL 2538246 at *3 (U.S.D.C. S.D.N.Y. June 4, 2018) ...................................... 8

*Enneking v. Schmidt Builders Supply Inc.,*
  875 F. Supp.2d 1274 (D. Kan. 2012), *recon. denied*, 917 F. Supp.2d 1200 (2013) .......... 18

*Firestone Tire and Rubber Co. v. Bruch,*
  489 U.S. 101 (1989) ..................................................................................... 17

*Gerosa v. Savasta & Co.,*
  329 F.3d 317 (2d Cir. 2003) .......................................................................... 17,18

*Institute of Applied Human Dynamics v. Mutual of America*,
  Docket No. 02 Div. 2331, 2003 WL 22126691, at *2 (S.D.N.Y. Sept. 12, 2003) ...........20

*Lea v. Republic Airlines, Inc.*,
  903 F.2d 624 & n.11 (9th Cir. 1990) ...................................................................17

*Leddy v. Standard Drywall, Inc.*, 875 F.2d 383 (2d Cir. 1989) ......................................11

*Lerner v. Amalgamated Clothing and Textile Workers Union*,
  938 F.2d 2 (2d Cir. 1991) ........................................................................... 10, 11

*Lowen v. Tower Asset Management, Inc.*,
  829 F.2d 1209 (2d Cir. 1987) ...........................................................................11

*Madonna v. United States*,
  878 F.2d 62, (2d Cir. 1989) ..............................................................................22

*Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*,
  845 F.2d 23 (1st Cir. 1988) ............................................................................... 9

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993) .............................................................................20

*Moore v. Navillus Tile, Inc.*,
  276 F. Supp.3d 110, (S.D.N.Y. 2017) ......................................................... passim

*Oden v. Boston Scientific Corp.*,
  2018 WL 3102534 at *11 (U.S.D.C. E.D.N.Y. June 4, 2018) ....................................21

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
  85 F. Supp.2d 282 (S.D.N.Y. 2000) ...................................................................20

*Oechsner v. Connell Ltd. Partnership*,
  283 F. Supp.2d 926 (S.D.N.Y. 2003) ....................................................... 17, 18, 20

*Olsen v. Pratt & Whitney Aircraft*,
  136 F.3d 273 (2d Cir. 1998) .............................................................................20

*Olson v. Gen. Dynamics Corp.*,
  960 F.2d 1418 (9th Cir. 1991), *cert. denied*, 504 U.S. 986 (1992) ..............................18

*Perez v. MTA*,
  11 Civ. 8655, 2012 WL 1943943, at *3 (S.D.N.Y. May 29, 2012) (quoting *Iqbal*, 556 U.S.
  at 678) ........................................................................................................ 8

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
  507 F.3d 117, (2d Cir. 2007) ............................................................................ 8

*Sanson v. Gen. Motors Corp.*,
  966 F.2d 618 (11th Cir. 1992), *cert. denied*, 507 U.S. 984 (1993) .............................. 18

*Sasso v. Cervoni*,
  985 F.2d 49 (2d Cir. 1993), *cert. denied* ............................................... 11, 12, 14, 16

*Shields v. Citytrust Bancorp., Inc.*,
  25 F.3d 1124 (2d Cir. 1994) ............................................................................ 20

*Stadnick v. Vivint Solar, Inc.*,
  861 F.3d 31, (2d Cir. 2017 ............................................................................... 16

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314, (2d Cir. 2010) ........................................................................... 16

*Toussaint v. JJ Weiser & Co.*,
  Docket No. 04 Civ. 2592, 2005 WL 356834, at *8 (S.D.N.Y. Feb. 13, 2005) ............... 20

*Watson v. Consol. Edison of New York*,
  594 F. Supp.2d 399 (S.D.N.Y. 2009) .................................................................. 20

Defendant John Russo ("Russo") by his attorneys, Genova Burns LLC, respectfully submits this Memorandum of Law in support of his Motion to dismiss the Seventh Cause of Action of the First Amended Complaint ("Complaint") with prejudice.

## PRELIMINARY STATEMENT

The Seventh Cause of Action of the Complaint must be dismissed because: (i) there is no basis for personal liability against John Russo; (ii) courts within the Second Circuit do not recognize a cause of action for common law fraud under ERISA; and (iii) Plaintiffs Cement and Concrete Workers Funds and the Local 780 Funds and their trustees (hereinafter referred to collectively as the "Funds") failed to comply with Rule 9(b) of the Federal Rules of Civil Procedure in pleading the Seventh Cause of Action.[1]

First, with respect to the claim for personal liability under ERISA, the Funds claim that New Leaf is the alter ego of co-defendant New York Concrete Corporation ("NYCC") and that Russo is personally liable on account of his alleged role with NYCC for "creating and orchestrating a scheme to omit hours" from remittance reports with his wife, Donna Russo. However, the Funds' contentions here rest on legal conclusions assumed as facts, and further fail to assert any actual conduct on the part of John Russo himself. Moreover, to the extent that the Funds' intend that the claim plead common law fraud under ERISA, this too must fail given ERISA's broad preemptive sweep of state law claims and the fact that courts universally reject attempts to circumvent ERISA preemption by alleging attenuated ERISA claims that are mere proxies for state law claims.

---

[1] Plaintiffs Metal Lathers Local 46 Funds and their trustees are not parties to the Seventh Cause of Action.

1

In addition, the Funds have entirely ignored Rule 9(b) of the Federal Rules of Civil Procedure in framing the Seventh Cause of Action. Plaintiffs' attempt to impose personal liability on John Russo simply because he is married to the current owner of NYCC and now is employed by New Leaf must fail, under controlling Second Circuit precedent as applied to the facts pled in the Complaint.

Accordingly, the Seventh Cause of Action of Plaintiffs' Complaint must be dismissed with prejudice as to John Russo.

## STATEMENT OF FACTS

Defendant Russo disputes and does not admit the facts set forth by the Funds in the Complaint, but nevertheless accept the two Plaintiff Funds' version of the facts solely for purposes of this Motion, and only to the extent summarized below.

The Plaintiffs who are parties to the Seventh Cause of Action are Trustees of multiemployer plans covered by ERISA which benefit members of the Cement and Concrete Workers District Council, LIUNA, and the Cement Masons Local 780 ("Unions"), both of which are unions that are allegedly parties to separate collective bargaining agreements ("CBAs") with defendant New York Concrete Corporation ("NYCC"). *See* First Amended Complaint, **Dkt. #30,** pp. 1-2; *id.* at ¶¶ 1, 6-7, 11, 17, 22. The Funds allege (and Defendant denies) that NYCC is owned and controlled by defendant John Russo, even though the Funds admit that NYCC identifies Donna Marie Russo as NYCC's owner and President and that she signed the remittance reports sent to the Funds as President of NYCC. *Id.* at ¶ 8 and Exhibit D. The Funds allege (and Defendant denies) that both NYCC and New Leaf are owned and "controlled" by John Russo, but admit that New Leaf identifies its principal as Eleonora

Hroncich. *Id.* at ¶ 9. The Funds also allege that John Russo is the "principal officer" of New Leaf. *Id.* at ¶ 1. Tellingly, the Funds offer no proof of their allegations that John Russo owns and controls the two businesses or that he is an officer or principal officer of either of the two companies.

The two Funds now sue John Russo solely under Sections 502 and 515 of ERISA, *id.* at ¶ 118, to make him personally, jointly and severally liable along with NYCC to these two Funds for contributions due and owing. *Id.* at ¶ 118. Plaintiffs claim that John Russo and Donna Marie Russo "fraudulently schemed" to avoid making contributions to the Funds by using New Leaf as an *alter ego* to perform work covered by the CBAs. *Id.* at ¶ 116.

**John Russo's Role at Defendant New Leaf.**   The Complaint alleges that John Russo owns and "controls" Defendant New Leaf, but offers no proof of this ownership or control. To the contrary the Funds admit that Eleonora Hroncich is the principal of Defendant New Leaf. *Id.* at ¶ 9. The Funds also admit that New Leaf was formed seven years ago, in 2011. *Id.* at ¶ 41. The Funds also allege that John Russo operates an excavator at the 50 Hudson Yards site for Defendant New Leaf, *id.* at ¶ 52, but claim somehow he is "in fact" both New Leaf's and NYCC's chief executive officer. *Id.* at ¶ 51. Despite the rhetorical use of "in fact," the Funds provide ***no facts*** to support their misogynistic claims that John Russo is the only person who could possibly be the CEO's of the two companies because, they argue, neither Eleonora Hroncich nor Donna Marie Russo is qualified, educationally or experientially, for these roles, and Donna Marie Russo's "presidency" of NYCC is a "sham." *Id.* at ¶ 44, 52.

The Funds claim that John Russo "has identified himself as the 'owner' of New York Concrete." *Id.* at ¶ 8. The Funds do not claim that John Russo currently identifies himself as NYCC's owner. The Funds allege that John Russo "negotiates labor agreements" on behalf of

NYCC, *id.* at ¶ 8, but the labor agreements that the Funds attached to the First Amended Complaint rebut this assertion. See Exhibits B and C to First Amended Complaint. The Funds allege that John Russo "*was* the principal representative of" NYCC, *id.* at ¶ 31 (emphasis added), but do not claim that John Russo is any longer the principal representative of NYCC.

**The Underlying Labor Agreements.** The Funds claim that the CBAs attached to the First Amended Complaint require NYCC to contribute to the Funds for every hour of covered work performed by NYCC "or its alter egos," but this is not factual. *Id.* at ¶¶ 19, 21, 24, 26. The CBAs do ***not*** provide that contributions are due and owing for work performed by NYCC's "alter egos." *See* Exhibits B, pp. 31-36, and C, pp.10-20, to Complaint. In addition, the two relevant CBAs make clear that contributions are due and owing only as to "work performed by employees." *See* Exhibits B, p. 36, and C, p. 19 to Complaint. The CBAs do not define the term "employee."

The Funds allege that one or more of the CBAs provide in various degrees for personal liability for the signatory employer's officers, partners, principals, executives, the executive manager, stockholders, partners, proprietor, or "employee of the corporation" who is "vested with the authority and control over the submission of remittance reports and/or payment of contributions to the Funds and Entities . . . ." *Id.* at ¶¶ 20, 25; *see* Exhibits B, pp. 31-36, and C, pp. 10-20, to Complaint. Neither CBA expressly imposes liability on an employee of the signatory employer ***who lacks the authority and control*** over the submission of remittance reports and payment of Fund contributions.

**Allegations about The Related Companies.** The Funds allege that The Related Companies ("Related"), which is not a party to this Action, is the general contractor for the 50 Hudson Yards construction project on the west side of Manhattan. *Id.* at ¶¶ 10, 29. The Funds

4

allege that NYCC has performed concrete work for Related in the past. *Id.* at ¶ 31. They further allege that NYCC used members of the Unions to perform this concrete work. *Id.* at ¶ 32.

The Funds allege that "upon information and belief" John Russo began using New Leaf as an *alter ego* of NYCC, to perform concrete work at 50 Hudson Yards, and that Related was able to complete the work without the obligations and labor costs that would otherwise be required if the work was performed by NYCC. *Id.* at ¶¶ 37-39. Although the Complaint claims that New Leaf is performing work at "55 Hudson Yards," *id.* at ¶ 52, Defendant believes that this allegation is a clerical error; New Leaf has performed no work at 55 Hudson Yards.

**Funds' Contradictory Allegations in Complaint.** The Funds' allegations contradict themselves repeatedly, as should be expected since so many of their allegations are based on "information and belief," which is no more than speculation fueled by frustration. For example, at paragraph 39 of the Complaint, the Funds claim that New Leaf was used to "perform the concrete construction work at Hudson Yards." This contradicts the Funds' claim at paragraph 37 of the Complaint that Related "induced" Russo "to form an alter ego entity through which he [Russo] and New York Concrete could perform the concrete construction work now being done by members of the Unions . . . ." The Funds admit that John Russo did not form New Leaf, which has existed since 2011. *Id.* at ¶ 41.

Again, at paragraphs 51 and 52, the Funds first claim that NYCC and New Leaf "have substantially identical management and supervision," but then admit that at least four former NYCC managers or supervisors are not NYCC managers or supervisors at all, but are employed by New Leaf. Their claim of substantially identical management and supervision is meritless and contradicted by the Funds' record admissions. The most that can be said is that certain NYCC

managers and supervisors now work for New Leaf. At no time do the Funds claim that the two companies share managers of supervisors, other than their claims regarding John Russo.

**Plaintiffs' Claims of Fraud under ERISA against John Russo.**    There can be no dispute that the Seventh Cause of Action in the Complaint sounds in fraud and fraudulent representation. At Paragraph 112, the Funds allege, "John Russo and Donna Marie Russo knowingly committed fraud..." At Paragraph 117, the Funds allege in part, "The fraudulent acts committed by John Russo and Donna Marie Russo against the Cement and Concrete Workers Funds and the Local 780 Funds ...." At Paragraph 117, the two Funds allege they reasonably relied to their detriment on the "material and false representations and omissions made by New York Concrete...."

Although the Funds claim in their Seventh Cause of Action that John Russo personally engaged in fraud under ERISA, they plead absolutely no specific facts in the Complaint's Statement of Relevant Facts or in the Seventh Cause of Action to support their allegations against him. All of the statements regarding John Russo in the Seventh Cause of Action are conclusory allegations, with no specifics as to actions, events or dates involving John Russo. Indeed, the documents Plaintiffs attach to their Complaint, at Exhibit D, by the Funds' own admission, relate exclusively to Defendant Donna Marie Russo, and relate only to allegedly false remittance reports made to the two Funds. The Funds make no such allegations as to the Metal Lather Local 46 Funds. *Id.* at ¶¶ 55 and 111, 117 and Exhibit D to Complaint.

For example, the two Funds allege that John Russo "made ... materially false representations," but name not a single misrepresentation he made to either of the Plaintiff Funds, with any specificity. See *id.* at ¶ 113. As a further example, the Funds claim that Mr. Russo "made false reports" and "representations" and "orchestrated a scheme to omit hours

6

worked in covered employment by New Leaf employees," and "knew that NYCC was filing false reports." *See* First Amended Complaint, **Dkt. #30**, at ¶¶ 1120-114. These allegations fail to comply with Rule 9(b), Fed. R. Civ. P.  Plaintiffs provide no specifics as to ***when*** Russo made false reports, no facts related to the alleged "scheme," no specific allegations as to how Russo exercised control over NYCC's filings, and no specific allegations as to Russo's alleged knowledge that "NYCC was filing false reports." Nowhere in the Complaint do the two Funds claim that they were deceived by Russo's alleged false reports and representations. The Funds claim they "relied to their detriment" on false representations and omissions but again provide no specifics to support this claim against John Russo.  The facts rebut this claim since the remittance reports on which the Funds rely – see Exhibit D to the Complaint – are all dated March 2018 and later and the Funds filed their original Action on March 29, 2018.

In fact, the Funds admit they lack knowledge of any "particular facts demonstrating the creation and the operation of New Leaf as an alter ego of New York Concrete . . . ." *Id.* at ¶ 116. In sum, the Funds have admitted they have no specifics.

Additional Facts appear in the Argument.

## ARGUMENT

### THE COURT SHOULD GRANT DEFENDANT'S MOTION TO DISMISS THE COMPLAINT'S SEVENTH CAUSE OF ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

#### A. Standard of Review.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). While courts must accept factual allegations in a complaint as if they were true,
they are "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Perez
v. MTA*, 11 Civ. 8655, 2012 WL 1943943, at *3 (S.D.N.Y. May 29, 2012) (quoting *Iqbal*, 556
U.S. at 678)l; see also *Contrera v. Langer*, 2018 WL 2538246 at *3 (U.S.D.C. S.D.N.Y. June
4, 2018).Instead, to survive a motion to dismiss, parties must "allege facts that are not merely
consistent with the conclusion that the defendant violated the law, but which actively and
plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507
F.3d 117, 121 (2d Cir. 2007).

## B. The Seventh Cause of Action Fails to Establish Any Cognizable Basis for a Claim of Personal Liability Against Mr. Russo.

The Complaint's Seventh Cause of Action must be dismissed as to John Russo for failing
to state a claim upon which relief may be granted. The facts alleged in the Complaint, even if
assumed to be true, do not state a cause of action for personal liability on the part of John Russo.

The two Funds allege that John Russo owns and controls NYCC, but concede that Donna
Marie Russo is listed as NYCC's owner. *See* First Amended Complaint, **Dkt. #30**, at ¶ 8. They
similarly allege that John Russo owns and controls New Leaf, even though the company lists
Eleonora Hroncich as its principal. *Id.* at ¶¶ 9. The Funds maintain "upon information and
belief" that John Russo set up New Leaf as an alter ego to avoid contributions and labor costs
for what was supposed to be covered work under the CBAs. *Id.* at ¶¶ 1, 37-39.

In their original complaint, Plaintiffs relied upon John Russo's alleged role at NYCC,
with no specifics, and asserted that John Russo personally was responsible for submitting payroll
reports to the Funds containing the hours spent performing covered work by NYCC employees
or its alter egos, and that Russo personally submitted false reports that omitted hours worked by

8

New Leaf employees, underpaying contributions he knew to be owed to the Funds. *See* Complaint, **Dkt. #1**, at ¶¶ 108-13.

Now however, in their First Amended Complaint, the Funds change their story and allege that it was in fact Donna Marie Russo, not John Russo, who prepared and signed "false" Remittance Reports. First Amended Complaint, **Dkt. #30**, at ¶ 111. The facts have not changed, only the Funds' version of the facts and their theory have changed.

The Funds further allege that John Russo is "an owner and chief operating officer" of NYCC, despite offering no evidence or specifics whatsoever in support of this contention, and also that Donna Marie Russo "is personally responsible for New York Concrete's ERISA reporting and personally signed the remittance reports submitted to the Funds." *Id.* at ¶ 113. Despite further asserting that "John Russo and Donna Marie Russo knew that New York Concrete was filing false reports and making substantial underpayments," to the Funds, the Funds attach not a single document showing that John Russo knew that he was underpaying contributions he knew were owed to the Funds during the relevant time period. *Id.* at ¶ 114.

The two Funds seek to hold John Russo jointly and severally liable for alleged contributions owed under Sections 502 and 515 of ERISA, based solely on these non-specific allegations, which allege no affirmative conduct on the part of John Russo to defraud the Funds. *Id.* at ¶ 118.

In *Cement and Concrete Workers District Council Welfare Fund League v. Lollo*, 35 F.3d 29 (1994) (citing with approval *Massachusetts Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988) (Breyer, J. on the opinion), a case brought under ERISA and the LMRA, the Second Circuit was faced with language substantially identical to the language in two of the CBAs at issue in this case. *Id.* at 35; *compare* First Amended Complaint,

9

**Dkt. #30**, Exhibits B at pp. 35-36 and C at p. 19. The Second Circuit refused to impose personal liability on a 49% owner of the corporate employer, or on the company's bookkeeper who was the employer's *de facto* treasurer, or on two other employees "who were intimately involved in the family business." *Id.* at 31. The court reasoned that the key provision in the CBA regarding personal liability under the LMRA failed to identify by name who would be bound by the provision, which made the "validity of the clause suspect." *Id.* at 35. The court also stated:

> The absence of signatures by any of the Lollo defendants besides Jeffrey further erodes the force of this provision since the agreement lacks a signed intention by the remaining Lollo defendants to assume the company's debts.
> . . .
> Moreover, it does not clearly indicate that the other Lollo defendants *agreed to accept personal liability for the company's obligations*. Given the presumption in *Lerner* against finding personal liability absent an express assumption of such responsibility, we think the district court's ruling was correct in denying summary judgment against the other Lollo defendants for non-payment of union dues and fund contributions.

*Id.* at 35-36 (emphasis added). The court next turned to the issue of personal liability under ERISA and held that there was no basis under Section 515 of ERISA to impose personal liability on the same defendants. *Id.* at 37.

See also *Lerner v. Amalgamated Clothing and Textile Workers Union*, 938 F.2d 2, 4 (2d Cir. 1991), where the court held that there was no personal liability on the part of the president of the signatory employer under the LMRA, even though the president signed a delegation of authority to the employer association to agree to a labor agreement which made the officers and directors of the member employers personally liable for the obligations of the labor agreement. The court held that the defendant president was not personally liable for the obligations of the labor agreement that the employer association negotiated, because of the presumption under New

York law against personal liability unless there is clear and explicit evidence of the agent's intention to assume personal liability. *Id.* at 5-6.

Moreover, the Second Circuit has recognized that "an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993), *cert. denied*, *Bourgal v. Cervoni*, 508 U.S. 973 (1993) (collecting cases from other circuits). Rather, personal liability is appropriate only under "special circumstances," such as where:

> the individual defendant acted in concert with fiduciaries to breach fiduciary obligations, intermixed corporate and personal assets, used corporate funds for personal purposes, or engaged in a criminal conspiracy to defraud beneficiaries of fringe benefit contributions.

*Moore v. Navillus Tile, Inc.*, 276 F. Supp.3d 110, 155 (S.D.N.Y. 2017), *appeal pending*, Docket No. 17-2985 (2d Cir. 2017) (citing *Sasso*, 985 F.2d at 50-51) (dismissing claim of personal liability against owners/corporate officers, despite finding of *alter ego* status of the corporate employer); *cf. Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987) (finding corporate officers liable for ERISA obligations because they acted in concert with fiduciaries to breach fiduciary obligations, intermixed corporate assets with their own assets and assets of related companies, and used corporate assets for their own personal benefits rather than to meet ERISA obligations); *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383 (2d Cir. 1989) (individual liability imposed on major shareholder and controlling officer who was convicted of criminal conspiracy to defraud funds). However, the mere fact that a corporate officer played any role in a company's failure to make required contributions "'is not automatically participation in a breach of fiduciary duties.'" *Navillus Tile*, 276 F. Supp.3d 110, 155 (quoting *Sasso*, 985 F.2d at 51).

11

In *Sasso* the individual defendant was the sole officer, director and shareholder of the corporate employer. *Id.* at 50. The District Court determined that the employer "terminated its payment to the Trust Funds because it was unable to satisfy its accounts receivable and that [the individual defendant] declined to supply his corporation with sufficient capital to satisfy its outstanding obligations." *Id.* While the District Court originally found the individual defendant to be equally liable along with his corporate employer for the unpaid trust fund contributions, the Second Circuit reversed the District Court's decision, holding that:

> a corporate employer does not have a fiduciary obligation to make trust fund contributions, and a corporate officer's role in a company's failure to make such contributions is not automatically participation in a breach of fiduciary duties.

*Id.* at 51 (internal citation omitted). The court further held that an employee of the corporate employer is not subject to personal liability where "[h]e did not act in concert with a fiduciary to breach a fiduciary obligation, he did not commit fraud," and there is no basis to pierce the corporate veil "on the theory that [he] *is* the corporation or its alter ego." *Id.* (emphasis in original). Rather, in rejecting the claim that the employee was personally liable for the ERISA violation, the court recognized that a corporate officer's "dominant role in the affairs of a corporate employer" was insufficient to establish individual liability for ERISA obligations. *Id.*

The court reached a similar conclusion in *Navillus Tile* where the plaintiffs (which included the two Funds) sought to hold the sole owners of different companies liable for trying to hide an *alter ego* relationship among four different companies. 276 F. Supp.3d at 155-56. The record evidence in *Navillus Tile* included:

- one company's use of an apartment owned by the wife of an owner,
- use of an individual as a "figurehead" to obtain insurance and financing for one of the companies,

- an owner's acquisition of options to purchase one of the companies accompanied by false testimony about the options, and
- backdating sales documents concerning one of the owner's shares of another company. *Id.*

While the court in *Navillus Tile* found each of these actions to be "troubling facts . . . relevant to concluding that the various corporations breached their *contractual* obligations to the Plaintiff funds," the court nevertheless held that "they do not rise to the level of the acts identified by the Second Circuit as sufficiently egregious 'special circumstances' to justify the imposition of personal liability." *Id.* (emphasis in original).

The court in *Navillus Tile* further explained its holding as to the individual owners. With respect to one owner-defendant, the court noted that he did not conspire with fiduciaries to defraud the funds of contributions owed, did not inappropriately use corporate funds, and did not engage in a criminal conspiracy. *Id.* at 156. Rather the evidence demonstrated only that when one company had financial problems, "he allowed his brother to use his non-union company as a front to get a contract." *Id.* On these facts, the court held that there was insufficient basis to impose personal liability on the owner. *Id.*

With respect to another owner-defendant in *Navillus Tile*, the court noted that there was no evidence of comingling of personal and corporate assets, no evidence of using corporate assets for personal reasons, no evidence justifying piercing the corporate veil to show that the owner's company was his *alter ego*, no evidence that he acted in concert with fiduciaries to deprive them of contributions owed, and no criminal conviction for engaging in a criminal conspiracy. *Id.* The court characterized the evidence as demonstrating only that the owner "establish[ed] a double-breasted operation under his ownership" in violation of his company's collective bargaining agreement, "he was personally involved in the affairs of Navillus' alter egos," and he "took

steps to disguise his involvement from the unions." *Id.* In spite of these evidentiary findings and the owner's false testimony at court, he was found not personally liable for contributions owed by his employer and its alter egos because, the court stated:

> a corporate officer cannot be held personally liable under ERISA for causing a corporate employer to breach its contribution obligations to make fringe benefit contributions, even where the officer played a "dominant role in the affairs' of the employer."

*Id.* (quoting *Sasso*, 985 F.2d at 51).

Here, the Funds allege in general terms that John Russo and Donna Marie Russo were responsible for submitting weekly payroll reports of employees who performed covered work, and "made or caused to be made materially false representations and omissions of existing facts by filing false weekly contribution statements," so that they would fail to seek contributions based on hours worked by NYCC's alleged alter ego, New Leaf. *See* Complaint, **Dkt. #30**, at ¶ 113. Finally, while in the original Complaint the Funds contended that John Russo was the President of NYCC and a controlling official of New Leaf, **Dkt. # 1** at ¶¶ 111-12, now they change their story and assert that he is "an owner and chief operating officer of New York Concrete and a controlling corporate official of New Leaf." First Amended Complaint, **Dkt. #30**, ¶ 113.

The facts as alleged in the Seventh Cause of Action fail to meet the standards established by the case law in the Second Circuit for imposing individual liability on John Russo, and do not constitute the "special circumstances" required by the court in *Sasso*, 985 F.2d at 50-51, as clarified in *Navillus Tile*, 276 F. Supp.3d at 155-56. As in *Navillus Tile*, there are no allegations that John Russo comingled corporate and personal assets, or used corporate assets for his personal reasons, or that New Leaf was an *alter ego* of Russo himself, so as to allow for piercing

14

of the corporate veil. Similarly, neither of the two Funds alleges that Russo was convicted of criminal conspiracy, nor do they allege that that he acted in concert with fiduciaries to deprive them of contributions owed. In fact, nowhere in their Complaint do the Funds even allege that any defendant in this Action is a fiduciary. Thus, even assuming as true the Funds' allegations regarding John Russo for purposes of this Motion, his alleged role is nevertheless insufficient as a matter of law to impose individual liability under ERISA for contributions allegedly owed.

Furthermore, the First Amended Complaint fails to allege any act or omission by John Russo in furtherance of the alleged fraud. The Funds do not allege that Mr. Russo signed the remittance reports, nor do they allege that he conspired with Donna Marie Russo. In fact, the term "conspiracy" is noticeably absent from the Seventh Cause of Action entirely, and the Funds instead theorize that John Russo and Donna Marie Russo "knowingly committed fraud … create[ed] and orchestrat[ed] a scheme" to omit hours from the remittance reports. *Id.,* ¶ 113.

Moreover, the Seventh Cause of Action relies upon a legal conclusion to establish that any fraud had in fact occurred. Specifically, the failure to include the hours worked by New Leaf employees on NYCC remittance reports can only be deemed a material misrepresentation of existing fact if a finding of alter ego liability has already been made as between New Leaf and NYCC, which is not the case here. In other words, it was not a material misrepresentation to omit hours from the remittance reports especially since there was and is no judicial finding that the two business are alter egos.

And while all factual allegations must be accepted as true for purposes of a motion to dismiss, the same is not true for legal conclusions. In fact, the Second Circuit has instructed that courts are to "give no effect to legal conclusions couched as factual allegations." *Consumer Financial Protection Bureau v. RD Legal Funding, LLC*, 17-CV-890(LAP), 2018 WL3094916

15

*1, *6, citing *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

Accordingly, even if the facts as alleged in the Complaint are assumed true on this Motion, the Complaint fails to allege any cognizable basis for establishing a claim for personal liability against John Russo, and he cannot be held personally liable under ERISA for any alleged breach by NYCC or New Leaf of obligations to contribute to the two Funds. *See Navillus Tile*, 276 F. Supp.3d at 156 (citing *Sasso*, 985 F.2d at 51). The Seventh Cause of Action should therefore be dismissed.

## C. The Second Circuit Does Not Recognize a Cause of Action under ERISA for Fraud.

The Seventh Cause of Action asserts a claim of fraud under ERISA against John Russo. This Cause of Action must be dismissed. While the Funds originally pled their Seventh Cause of Action as one for common law fraud, they have amended this and reframed their claim as one for "individual liability under ERISA." However, the substantive content of the Seventh Cause of Action in the First Amended Complaint remains largely the same as its previous iteration, namely, fraud. Accordingly, to the extent that the Funds intend the Seventh Cause of Action to maintain a claim of fraud against Mr. Russo, the claim must be dismissed as the Second Circuit does not recognize a cause of action for fraud under ERISA, or, in the alternative, the Court should order that all allegations of fraud in the Complaint against John Russo be stricken.

ERISA does not permit a cause of action for federal common law fraud, and courts lack jurisdiction to consider such claims. Courts within this District have previously rejected claims for common law fraud under ERISA. *See, e.g., Adler v. Aztech Chas. P. Young Co.*, 807 F. Supp. 1068 (S.D.N.Y. 1992). In *Adler*, the court recognized that it was not authorized to create

new causes of actions to accompany ERISA claims. *Id.* at 1072. While the *Adler* court acknowledged that federal courts are directed "to develop a federal common law to aid in understanding the rights and obligations under ERISA when addressing claims pursuant to that statute," the court in *Adler* followed the Ninth Circuit's ruling that Supreme Court precedent "was not authorizing federal courts to create new causes of action to append to ERISA claims." *id.* (citing *Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 632 & n.11 (9th Cir. 1990)) (explaining Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)). Rather, in dismissing the common law fraud claim, the court in *Adler* clarified that it would apply common law in the context of understanding rights and obligations under the ERISA plan, but would not read into ERISA a separate claim for common law fraud. *Id.*; *see also Altieri v. Cigna Dental Health, Inc.*, 753 F. Supp. 61, 64-65 (D. Conn. 1990) (rejecting state common law fraud claims as preempted by ERISA and further rejecting plaintiffs' "absorption" argument that a common law fraud claim is absorbed into ERISA).

This District reiterated its position in *Oechsner v. Connell Ltd. Partnership*, 283 F. Supp.2d 926 (S.D.N.Y. 2003), *judgment aff'd on other grounds*, 101 Fed. Appx. 849 (2d Cir. Jun. 15, 2004). There, the court held that while "Plaintiffs purport to bring claims under 'Federal Common Law' for . . . fraud [and other claims]," these theories of relief under ERISA had to be rejected, even if ERISA was not adequate to guard against wrongs suffered by the plaintiffs. *Id.* at 935. The court found the fact that ERISA provided the exclusive remedy for such duplicative federal common law claims, to be a "proposition [that] is clearly supported by controlling law." *See id.* (citing *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322 (2d Cir. 2003)). In holding that the fraud claim under ERISA must be dismissed, the court acknowledged that

17

"[t]he Second Circuit concluded that there was 'little room in [ERISA's] framework for judicially-created 'interstitial' remedies.'" *Id.* (quoting *Gerosa*, 329 F.3d at 322).

Courts in other circuits have reached the same conclusion that there is no cognizable claim of fraud under ERISA. *See, e.g.*, *Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 621-23 (11th Cir. 1992), *cert. denied*, 507 U.S. 984 (1993) (refusing to extend remedies under ERISA to a claim for common law fraud under ERISA); *Olson v. Gen. Dynamics Corp.*, 960 F.2d 1418, 1423 (9th Cir. 1991), *cert. denied*, 504 U.S. 986 (1992) ("For the reasons already discussed regarding the interplay between ERISA's preemption provision and its remedial scheme, we agree with the district court that to devise a federal common law remedy for Olson's [fraud] claim would defeat the scheme created by Congress in ERISA"); *Enneking v. Schmidt Builders Supply Inc.*, 875 F. Supp.2d 1274, 1285 (D. Kan. 2012), *recon. denied*, 917 F. Supp.2d 1200 (2013) (collecting cases and citing *Adler* with approval); *Carpenters Welfare Fund of Illinois v. Shadwick*, Docket No. 93 C 2362, 1994 WL 86015, at *4 (N.D. Ill. Mar. 14, 1994) (rejecting cause of action for common law fraud under ERISA).

Since the overwhelming weight of judicial authority has rejected causes of action for fraud under ERISA, since they circumvent ERISA's preemption of state law fraud claims, the Seventh Cause of Action must be dismissed for failure to state a claim upon which relief can be granted. *See Adler*, 807 F. Supp. at 1072; *Oechsner*, 283 F. Supp.2d at 935. In the alternative, the Court should order that all claims and allegations of fraud, fraudulent acts, and false representations and omissions in the Complaint be stricken from the First Amended Complaint.

D. **The Seventh Cause of Action Fails to Comply with Fed. R. Civ. P. 9(b) and Must be Dismissed in Its Entirety.**

Regardless of whether the Seventh Cause of Action pleads individual liability under ERISA, or instead is a claim for fraud under ERISA, it must nevertheless be dismissed outright for failure to comply with Fed. R. Civ. P. 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure provides as follows:

> FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The Seventh Cause of Action in the Complaint should be dismissed in its entirety as to Defendant John Russo because it fails to comply with Rule 9(b). Whether the Seventh Cause of Action pleads a claim for fraud or fraud as a basis for personal liability under ERISA, it nevertheless fails to do so with the requisite degree of particularity and must be dismissed. The Complaint's presentation of the facts contains absolutely no allegations, let alone particularized allegations, stating the circumstances constituting the alleged fraud by John Russo. The Funds plead no facts or circumstances with any particularity. As such, the Seventh Cause of Action is fatally defective because it lacks any factual particularity as to the circumstances constituting fraud. The Funds claim that the remittance reports contained "materially false representations." Id. 113 at Exhibit D. However, the very documents on which the Funds relay make it absolutely clear that the **_only_** person who signed these reports was Donna Maria Russo in her capacity as President or "Corporate Officer" of NYCC.

Accordingly, the Court should dismiss the Seventh Cause of Action in its entirety as to Defendant John Russo.

Under Fed. R. Civ. P. 9(b), "allegations of fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Toussaint v. JJ Weiser & Co.*, Docket No. 04 Civ. 2592, 2005 WL 356834, at *8 (S.D.N.Y. Feb. 13, 2005) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993))); *see also Watson v. Consol. Edison of New York*, 594 F. Supp.2d 399, 411 (S.D.N.Y. 2009) (quoting *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 273, 275-76 (2d Cir. 1998) (Rule 9(b) requirement was "not satisfied where plaintiff failed to allege 'what was said, or the terms of the advice, counsel, and recommendations (as opposed to the mere gist)' and 'who said it')")); *Oechsner*, 283 F. Supp.2d at 933 (alleging breach of fiduciary duty was "motivated by manager greed" was not sufficient to trigger the fraud and concealment exception to the statute of limitations under ERISA); *Institute of Applied Human Dynamics v. Mutual of America*, Docket No. 02 Div. 2331, 2003 WL 22126691, at *2 (S.D.N.Y. Sept. 12, 2003) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (Under Rule 9(b), "a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations . . . . [and] explain how the misrepresentations were fraudulent and 'plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of falsity, or reckless disregard for the truth.'")) (citation omitted).

When a claim of fraud is based on an alleged omission, the claimant "'must specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff.'" *Toussaint*, 2005 WL at *8 (quoting *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp.2d 282, 293 (S.D.N.Y. 2000)). These

requirements apply to any claims that are based on a theory of fraud. *See id.* (applying Rule 9(b) to theory of fraud in the ERISA context).

In the *Institute of Applied Human Dynamics* decision, the court held that fraud allegations in the context of a claim of an ERISA breach of fiduciary duty failed to meet Rule 9(b)'s standard of particularity., where the plaintiff failed to describe the nature of the misrepresentations, did not mention where the misrepresentations took place, and only loosely described when they occurred. *Id.*, 2003 WL at *2-4.

In the *Toussaint* decision, the court acknowledged that plaintiffs may not "base a general allegation of fraud on allegations that themselves rest 'on information and belief' without any factual support or source . . . ." *Id.*, 2005 WL at *10.

Although at paragraph 117 of the Complaint the two Funds allege that they reasonably relied to their detriment on the "material and false representations and omissions made by New York Concrete," they provide absolutely no indication as to whether they actually read any of the allegedly false representations and if they did, whether they justifiably relied on these specific statements to their detriment. Without the facts, the Court should find that the Funds' fraud and fraudulent representation claims cannot proceed. *Oden v. Boston Scientific Corp.*, 2018 WL 3102534 at *11 (U.S.D.C. E.D.N.Y. June 4, 2018). It is impossible for the Funds to allege the element of detrimental reliance because the remittance reports they attached to the Complaint are all dated March 2018 and later, and the Funds' original Complaint is dated March 27, 2018 and was filed March 29, 2018. Instead of changing their position in detrimental reliance on the remittance reports, the Funds immediately sued John Russo, New Leaf and NYCC, and then added Donna Marie Russo as a party defendant in May 2018. See also *Brumfield v. Merck & Co.*, 18-CV-365(JFB)(GRB), 2018 WL 2277835 *8 (E.D.N.Y. May 18, 2018) ("Not one

plaintiff has identified the specific statements or omissions that they relied on ....This is fatal to plaintiffs' claims").

As the First Amended Complaint reveals, the Seventh Cause of Action provides no factual support or source for its conclusory allegations. In addition, the Complaint as a whole is littered with qualifications that numerous key allegations against the Defendants are based on nothing more than "information and belief." *See* First Amended Complaint, **Dkt. #30**, at ¶¶ 31, 37, 47, 51, 62, 72, and 81.

Moreover, the Funds allege no fraudulent act by Mr. Russo. Rather, Paragraph 111 states that Donna Marie Russo, not John Russo, made and signed the remittance reports. Furthermore, Paragraph 116 acknowledges the fatal lack of particularized facts required, stating, "Particular facts demonstrating the creation and the operation of New Leaf as an alter ago of New York Concrete are exclusively within the knowledge of Defendants." Ignoring, for the moment, the fact that New Leaf was created several years before any of the events giving rise to this Action occurred, the Funds admission at Paragraph 116 mandates dismissal of the Seventh Cause of Action. "Alleging fraud without the requisite specificity and seeking discovery to support [one's] allegations 'is precisely what Rule 9(b) attempts to discourage.'" *Brumfield. v. Merck & Co.*, 18-CV-365(JFB)(GRB), 2018 WL2277835 *1, *4 (E.D.N.Y. May 18, 2018), citing *Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989). The Funds should not be permitted to prosecute the Seventh Cause of Action and thereby work an end run around Rule 9(b). The Seventh Cause of Action must be dismissed for failure to comport with the Rule 9(b)'s requirements.

## CONCLUSION

For the foregoing reasons, Defendant John Russo respectfully requests that the Court dismiss all claims against him in the Seventh Cause of Action contained in the First Amended Complaint, with prejudice.

<div style="margin-left: 40%;">

**GENOVA BURNS LLC**
Attorneys for Defendants
New Leaf Development LLC and John Russo

By: _Patrick W. McGovern_

PATRICK W. McGOVERN
Genova Burns LLC
494 Broad Street
Newark, New Jersey 07102
Email: pmcgovern@genovaburns.com
Telephone: (973) 535-7129

</div>

Dated: August 1, 2018

14408912v2 (23409.002)

23